IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| **PETROLEUM PRODUCTS &** | § | CASE NO. 16-31201-H1-11 |
| **SERVICES, INC.** | § | |
| | § | Judge Isgur |
| Debtor. | § | |
| | § | |

**EMERGENCY MOTION (I) FOR INTERIM AUTHORITY TO
USE CASH COLLATERAL II) TO INCUR POST PETITION
INDEBTEDNESS UNDER 11 U.S.C. §363, §364, §502(b) AND §105 AND
(III) REQUEST FOR PRELIMINARY AND FINAL HEARINGS**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE OUR RESPONSE WITHIN 23 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 23 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Petroleum Products & Services, Inc. d/b/a Wellhead Distributors Int'l ("Debtor"), debtor and debtor in possession, files this *Emergency Motion (I) for Order Granting Interim Authority to Use Cash Collateral (II) to Incur Post Petition Indebtedness Under 11 U.S.C. §363, §364,*

*§503(b)and §105 and (III) for Preliminary and Final Hearings* (the "Motion") and in support thereof, respectfully states as follows:

### I. Summary and Emergency Basis

1. This Chapter 11 case was filed on March 4, 2016.

2. The Debtor hereby seeks authorization to use cash collateral on an interim basis. Without such relief, the Debtor will suffer immediate and irreparable harm because the Debtor would be required to cease operations immediately, and the Debtor's ability to reorganize its business would be eliminated. Upon approval of this Motion, JP Morgan Chase, which holds liens on the Debtor's assets, will be given replacement liens on post-petition receivables for use of its cash collateral. The Debtor anticipates obtaining consent of parties with security interests and other rights in and to the Debtor's cash collateral to the relief requested herein. A Proposed Budget is attached hereto as **Exhibit A.**

3. However, in the short term, the Debtor's revenues may be insufficient to fund ongoing operations. Accordingly, the Debtor will likely require an infusion of funds to pay ongoing expenses in the near term. The Debtor's largest shareholder will provide an unsecured DIP Financing Agreement up to $500,000.00 to cover any shortfall. The DIP Financing Agreement shall be allowed as an administrative expense pursuant to 11 U.S.C. §503(b)(1).

### II. Jurisdiction and Venue

4. This Court has jurisdiction over these cases pursuant to 28 U.S.C. § § 157, 1334.

5. This is a core proceeding under 28 U.S.C. § 157(b)(2)(D).

6. Venue of the Debtor's Chapter 11 case is proper in this district pursuant to 28 U.S.C. §§ 1409.

### III. Background Information

### A. Overview of the Debtors

7. The above captioned Chapter 11 bankruptcy case was filed on March 4, 2016, under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. §§101 et sq. (the "Bankruptcy Code"). The Debtor continues to manage its respective property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

8. No trustee or examiner has been appointed in the Debtor's bankruptcy case. An official committee of unsecured creditors has not yet been established.

9. A detailed factual background of the Debtor's business and operations, as well as the commencement of this Chapter 11 case, is more fully set forth in the *Declaration of Alejandro Kiss in Support of the Debtor's Chapter 11 Petition and Requests for First-Day Relief* filed contemporaneously herewith and incorporated herein by reference. A brief summary of the factual background is listed below.

10. The Debtor began its business in 1995 as a single location in Houston, Texas as the first wholesale distributor of API-6A wellhead equipment and valves in North America. To satisfy wider range of customer needs, WDi expanded its product line to include high pressure, engineered wellhead systems and specialty valves and its services to include manufacturing, assembly, design and aftermarket repair capabilities. WDi offers a full suite of wellhead equipment, gate valves, mud valves, chokes and multi-bowl wellhead systems. WDi serves independent wellhead service companies and original equipment manufacturers ("OEMs") operating in the upstream oil and gas industry through its multiple stocking locations in the United States. To support customers, WDi currently has five strategic locations, one of which will likely be closed by the end of March 2016.

### B. Financing History

*JP Morgan Chase Bank*

11.     Throughout the Debtor's history, various lenders have loaned money to business. In 2014, JP Morgan Chase Bank provided the latest round of financing for the Debtor's business (the "Indebtedness"). On or about October 1, 2014, Debtor entered into a loan agreement and various related documents with JP Morgan Chase Bank (the "Lender") for a Revolving Loan Agreement to provide the Debtor with a Revolving Line of Credit up to $20,000,000 (the "RLOC"), a term loan in the principal sum of $4,500,000 (the "Term Loan"), a $3,000,000 interim promissory note (the "Interim Note") which could be advanced up to $3,000,000 and a first advance note in the principal sum of $559,600.00 representing the amount that was advanced under the Interim Note (the "First Advance Note") (collectively, the "Term Notes").

12.     In 2015, the Lender aggressively pursued non-monetary default provisions related to certain debt coverage ratios associated with the Indebtedness. The Debtor and the Lender entered into extensive negotiations that resulted in the parties entering into a modification and forbearance agreement (the "Forbearance Agreement"). As part of the Forbearance Agreement, Mr. Kiss became a guarantor of the Indebtedness. In addition, as part of the Forbearance Agreement, the maximum amount of RLOC was reduced to $7 million and the borrowing base of the eligible accounts receivables was reduced.

13.     The current approximate balance of the Indebtedness is as follows:

    a.  RLOC                        $2.3MM

    b.  Term Note                  $3.8MM

## BASIS FOR REQUESTED RELIEF

### A. Cash Collateral and Authority to Use

14. As stated above, prior to the Petition Date, the Debtor entered into the Chase Loans whereby liens and security interests in substantially all of the Debtors assets, including accounts receivable and cash (collectively "Collateral") were granted to JP Morgan Chase.

15. The Debtor hereby seeks authority to use the cash collateral in connection with this Bankruptcy Case to preserve the value of Debtor's businesses. Pursuant to the Bankruptcy Code, the Debtor is required to provide adequate protection to the Lender with respect to Debtor's use of cash Collateral.

16. JP Morgan Chase is owed collectively owed more than $6 million with respect to the Indebtedness. While the terms of an agreed order have not been reached, the Debtor will continue to work with the Lender to reach an agreement for the use of cash Collateral and the Debtor expects that an agreed order will include, among others, the following:

> A. Debtor may each use cash Collateral pursuant to approved budgets, with a 10% variance per line item and the ability to apply any un-used budgeted funds at its discretion.
>
> B. The Lender's prepetition liens will be adequately protected by replacement liens to the same extent and priority as its respective prepetition liens.

17. The only viable source of funding for post-petition operations is cash collateral made available to the Debtor and DIP financing described herein.

18. Without the use of cash collateral on an interim basis, the Debtor would suffer immediate and irreparable harm pending a final hearing on the Motion and would likely be required to cease operations immediately, causing harm to the Debtor, the estate and the Debtor's customers.

19. The importance in cases like these of access to cash was recognized in *In re George Ruggieri Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir. 1984). The court in that case noted: "A debtor, attempting to reorganize in business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild." Id. at 1019. 31.  The Debtor anticipates that the Lender will consent to the proposed use of cash Collateral, subject to receiving replacement liens and perhaps other protections as provided in an agreed order.  To the extent it does not consent, however, the Court may authorize the use of cash collateral by the Debtor provided that the Court determines that any objecting entity's interest is adequately protected. 11 U.S.C. § 363(c)(2)(B) and (e).

20. Section 361 sets forth three non-exclusive examples of what may constitute adequate protection.  They include providing the secured creditor with "additional or replacement liens" and other relief that provides the secured creditor with the "indubitable equivalent" of the secured creditor's interest in the cash collateral.  Legislative history indicates that Congress intended to provide courts with flexibility to grant relief on a case-by-case basis.

21. Pursuant to the Motion, the Debtor proposes to grant the Lender replacement liens on post-petition accounts receivable, a recognized method for providing adequate protection as specified under sections 361 and 363.

22. In exchange for the use of cash Collateral, as adequate protection for the use of the cash Collateral, but only to the extent of the actual diminution in value of the pre-petition Collateral, the Debtor proposes to grant to the Lender replacement liens in the form of security interests and liens upon the same types and kinds of assets upon which they held a  prepetition lien, subject only to valid, perfected, and enforceable prepetition liens (if any) which are senior as of the Petition Date, as well as an additional lien upon the Debtor's post-petition accounts and

accounts receivables. The grant of replacement liens will only apply to the extent that the pre-petition Collateral was encumbered by valid and perfected liens and security interests (collectively, the "Replacement Liens").  The Replacement Liens will not attach to any avoidance actions under Chapter 5 of the Bankruptcy Code.

23.     Without access to cash Collateral, operations will cease.  The going concern of the Debtor's assets will plummet, receivable collections will dry up and key employees will quit.  From that standpoint, the overall collateral position of Lender will deteriorate markedly, more than offsetting any erosion of the cash collateral.

24.     Bankruptcy Rule 4001(c)(2) states that 14 days' notice must be given before final approval of such cash Collateral use is given.  With this Motion, the Debtor is providing the Lender with 14 days' notice between the time of the filing of this Motion and request that the Court set a final hearing on this matter upon expiration of the 14 notice period.  The Debtor will suffer irreparable harm if the Motion is not immediately considered as they do not have the funds to continue operations.  There is little harm to general unsecured creditors under this agreement since the Lender already apparently has a first lien on substantially all of the Debtor's assets.  Thus, if the Debtor cannot fund operations, it will have to cease operating and Lenders may seek to enforce its remedies in its collateral subject to the respective lien, leaving nothing for unsecured creditors.  Accordingly, emergency consideration of this motion is required.

**B.  DIP Financing and Legal Standard**

25.     Alex Kiss, the Debtor's largest shareholder is willing to provide DIP financing to the Debtor during the pendency of this case.  Subject to court approval, Mr. Kiss has agreed to provide unsecured DIP financing ("DIP Financing Agreement") to the Debtor in the amount up to

$500,000.00 ("DIP Promissory Note"). The DIP Financing Agreement shall be allowed as an administrative expense pursuant to 11 U.S.C. §503(b).

26. The DIP Financing Agreement will be used to help fund the Debtor's operations for the next six to nine months, as necessary. Debtor anticipates confirming a plan of reorganization prior to the maturity of the DIP Promissory Note.

27. If the DIP Financing Agreement is not approved, Debtor will be unable to continue operations and manage its business.

28. The material terms of the DIP Promissory Note are as follows:

| | |
|---|---|
| *Amount:* | up to $500,000.00 USD |
| *Interest Rate:* | 7.00 % |
| *Maturity Date:* | Note comes due on the earlier (a) December 31, 2016; (b) the effective date of a plan of reorganization or arrangement in the Chapter 11 Case; or (c) conversion of the case to a Chapter 7. |
| *Collateral/lien:* | None |
| *Treatment/priority:* | Administrative expense under 11 U.S.C. § 503(b) or 507(b), subject only to administrative fees and expenses of professionals allowed under Section 327 of the Bankruptcy Code. |
| *Additional Adequate Protection:* | None |
| *Releases or waivers*: | None |
| *Indemnifications:* | None |

29. A copy of the DIP Promissory Note is attached as **Exhibit "B."** Debtor requests that this credit facility be allowed under 11 U.S.C. § 503(b) or 507(b) as an administrative expense, subject only to administrative fees and expenses of professionals allowed under Section 327 of the Bankruptcy Code.

30. The Debtor believes that it has business justification for entering into the DIP Promissory Note in order to ensure that future operations are funded, payroll obligations are met, and to the extent necessary, and expenses of the Chapter 11 proceedings are covered.

31. Thus, the Debtor asks for this Court to authorize the Debtor to enter into the DIP Promissory Note with Mr. Kiss, in an amount up to $500,000.00 which will be entitled to administrative expense priority under 11 U.S.C. § 503(b) or 507(b).

32. The Debtor is unable to obtain alternative financing on reasonable terms with such short notice. Further, the proposed terms of the DIP Financing Agreement are favorable and it is unlikely that better terms could otherwise be negotiated.

33. The Debtor requests that this Court enter the preliminary order attached hereto as Exhibit C; set a final hearing on this Motion with 14 day notice pursuant to Bankruptcy Rule 4001 if objections are filed, and at such hearing, authorize the Debtor to continue using its cash Collateral for the remainder of this Chapter 11 case.

## IV. Conclusion

WHEREFORE, the Debtor respectfully request that the Bankruptcy Court:

1) Set an emergency preliminary hearing on this Motion;

2) Enter a preliminary order authorizing the use of cash collateral pursuant to the attached budget for 14 days;

3) Enter a preliminary order authorizing the Debtors to incur post-petition indebtedness as an administrative claim on an interim basis;

4) Set a final hearing on this Motion after expiration of fourteen (14) days notice period required by Bankruptcy Rule 4001; and

5) Granting all such other and further relief as is just and proper.

DATED: March 4, 2016

                         Respectfully submitted,

                         HOOVER SLOVACEK LLP

                    */s/ T. Josh Judd*
By: _____
                         Edward L. Rothberg
                         State Bar No. 17313990
                         Email: rothberg@hooverslovacek.com
                         T. Josh Judd
                         State Bar No. 24036866
                         Email: judd@hooverslovacek.com
                         Hoover Slovacek LLP
                         5051 Westheimer, Suite 1200
                         Galleria Tower II
                         Houston, Texas 77056
                         Telephone: (713) 977-8686
                         Facsimile: (713) 977-5395

                         Proposed Attorneys for Debtors

## **CERTIFICATE OF CONFERENCE**

      I hereby certify that the counsel for the Debtor has conferred with Liz Boydston, counsel for the Lender, in an effort to reach an agreement on the interim use of cash collateral. Although an agreement has not yet been reached, the parties will continue to discuss the terms of an acceptable interim order.

                                           /s/ T. Josh Judd
                                           T. Josh Judd